PEOPLE OF PORTO RICO, Plaintiff and Appellee, *v.* MARIO ORTEGA, Defendant and Appellant.

No. 2805. Argued June 16, 1926.—Decided July 16, 1926.

*Tomás Paz* for the appellant. *José E. Figueras, Fiscal,* for the appellee.

MR. JUSTICE FRANCO SOTO delivered the opinion of the court.

Mario Ortega was sentenced to thirty days in jail for carrying a revolver on his person.

Rafael Zeruto, an insular policeman, made the complaint and the essential part of his testimony reads as follows:

"Were you on duty in that ward?—I had gone there with Tomás Grillasca in search of an individual who had been bailed by Grillasca.—Was that individual a fugitive from justice?—Yes.—What ward was that?—Rubias ward.—How and where did you seize the revolver?—I was talking to Mr. Miner, School Inspector of Yauco, and Grillasca on the public road when this boy was coming along the road and when he came in front of me he buttoned up his coat, which appeared suspicious to me, whereupon I asked him what he was carrying and he handed me the revolver."

Tomás Grillasca testified as follows:

"There were the three of us when this man (pointing to the defendant) came along on a horse with a raincoat in his hand and the policeman saw something and directly went up to him and took from him the revolver."

The appellant assigns that the lower court erred in not quashing the information for the reason that the search was illegal, it not appearing that he made a malicious or

open display of the revolver. If we base our opinion on the testimony of the policeman to the effect that when the defendant buttoned up his coat and was asked what he was carrying the defendant handed the revolver to the policeman, as a matter of fact it can not be held that there was a search in any sense of the person of the defendant. It would appear rather that the defendant was startled at the sight of the policeman and his own attitude betrayed him into surrender-- ing spontaneously to the policeman the weapon that he carried. It is true that Grillasca testified that the revolver was in the raincoat and that the policeman took it from the defendant, but we then come to the point of determining as to the credibility of these two witnesses, and the finding of the lower court undoubtedly rested on the testimony of the policeman, which was given full credit.

The evidence for the defendant shows also that the defendant was an employee of Dr. Arrache, and that as the latter could not go to a farm in an automobile because of a land-slide on the road, he asked for a horse, which was brought by the defendant with an umbrella and a raincoat.

By reason of the peculiar circumstances of this case, the question to be decided is whether the purpose or intention of the defendant in carrying the revolver is an element to be considered in this case. The jurisprudence on this point may be summed up as follows:

"In some jurisdictions the offense of carrying concealed weapons is held to constitute no exception to the general rule that to constitute a crime there must be a criminal intent, and in prosecutions for such offense the courts have taken into consideration, in determining whether the statute was violated, the intent with which the weapon was carried. In these jurisdictions it is held that if a person merely carries a weapon as an article of merchandise, without any intention, fairly inferable, to use it as a weapon, he is not guilty of an offense under the statute. The foregoing rule has been held to apply where the defendant was simply carrying home a weapon which he had purchased. Likewise it has been held that if the weapon is broken the owner may properly carry it to a repair shop

and to his home after it has been repaired without subjecting himself to any criminal liability. But even where this rule prevails, it has been held that a person carrying a concealed weapon as an article of merchandise must proceed with it directly to the place where it is to be delivered, and if he delays or deviates from the direct route without necessity he may be held liable for carrying a concealed weapon. In other jurisdictions the courts hold that the intent of one accused of carrying a concealed weapon is immaterial, and that if he has a weapon concealed on his person contrary to statute he is guilty of the crime denounced thereby regardless of the purpose for which he carried the weapon. In support of this rule it has been held that the guilty intent is the intent to carry the weapon concealed, and does not depend upon the intent to use it, and that the object of the statute is not to forbid the carrying of a deadly weapon for use, but to prevent the opportunity and temptation to use it arising from its concealment. Where a weapon is placed in a person's pocket without his knowledge or consent he is not guilty of carrying concealed weapons, although he might have known that the weapon was on his person by the exercise of reasonable diligence.'' 8 R.C.L. 288, par. 309.

The difference of opinion to be observed among the authorities would seem to be more apparent than real, and all things indicate that each case should be decided by taking into consideration the special circumstances surrounding it.

The evidence for the defendant consisted of the testimony of Dr. Arrache and that of the defendant himself. It tended to show that the revolver was in a pocket of the raincoat and that the defendant was ignorant of that fact. Dr. Arrache testified, however, that he could not assert with absolute certainty that the defendant did not know that he was carrying it.

It is a fact, from what can be inferred from the evidence, that the defendant was performing a duty imposed on him, among other things, that of delivering a revolver; but this alone would not relieve him from liability. The fact that should exonerate the defendant would be his ignorance of the fact that he was carrying the weapon. However, from the manner in which the policeman testified that the defend-

ant handed the weapon to him, it had to be presumed that he knew that he was carrying it.

For the reasons hereinbefor● given the judgment appealed, from should be affirmed.

Mr. Justice Hutchison dissented.